## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **KAMRYN DUCKETT** ) | |
| 3690 Prince Edward Drive ) | |
| White Plains, MD 20695 ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | |
| **WASHINGTON METROPOLITAN** ) | |
| **AREA TRANSIT AUTHORITY** ) | |
| 300 7th Street SW ) | |
| Washington, DC 20024 ) | |
| ) | |
| ) | |
| **Serve:** ) | |
| Patricia Y. Lee ) | |
| Chief Legal Officer & General Counsel ) | |
| 300 7th Street SW ) | |
| Washington, DC 20024 ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff Kamryn Duckett, by and through undersigned counsel, brings this civil action against Washington Metropolitan Area Transit Authority ("WMATA") compensatory and consequential damages and lost wages for the injuries that the Plaintiff suffered by reason of the Defendant's discriminatory acts in violation of Title VII of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act.

1

## NATURE OF THE ACTION

1.   Plaintiff brings this civil action against WMATA for sex discrimination and retaliation under Title VII and disability discrimination under Section 504 of the Rehabilitation Act. On January 9, 2025, a fellow WMATA employee cornered Plaintiff, grabbed her forcefully about her face and made unwanted sexual advances, while Plaintiff was performing her assigned work duties. Plaintiff immediately reported the assault to her supervisors and filed a written complaint. WMATA failed to separate the assailant to assure Plaintiff's safety and wellbeing, failed to investigate promptly or effectively or otherwise discipline her assailant, and transferred Plaintiff to a lesser role with less opportunities for overtime and career advancement. WMATA's conduct created and perpetuated a hostile work environment, punished Plaintiff for her protected activity, and — by its outrageous indifference to a known workplace assault—caused Plaintiff severe emotional distress.

## JURISDICTION AND VENUE

3.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under Title VII, 42 U.S.C. § 2000e et seq., and the Rehabilitation Act, 29 U.S.C. § 794(a), (d), with remedies under 29 U.S.C. § 794a. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is over $75,000.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred at WMATA's offices in the Commonwealth of Virginia.

5.      This Court has personal jurisdiction over Defendant WMATA because WMATA conducts substantial business operations and maintains offices in the Commonwealth of Virginia.

6.      Plaintiff satisfied the administrative requirements for filing her claims. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 8, 2025. On DATE, Plaintiff filed an Amended Charge of Discrimination on December 24, 2026. On February 4, 2026, Plaintiff received a Right to Sue notice, authorizing this suit within 90 days. This Complaint is timely filed within 90 days of the plaintiff's receipt of the EEOC Notice of Right to Sue.

## PARTIES

8.      Plaintiff Kamryn Duckett ("Plaintiff") is a citizen of the United States and an adult resident of Virginia. She currently resides at 5962 Grand Pavilion Way, Apt. 113, Alexandria, Virginia 22303. Plaintiff served as Customer Engagement Representative, Communications Agent and Customer Engagement Specialist for WMATA from May 2019 through on or around August 5, 2025.

9. Defendant Washington Metropolitan Area Transit Authority ("WMATA") is an interstate public transit agency that plans, finances, develops, builds and operates the public transit systems across Virginia, Maryland and the District of Columbia, and maintains offices in Virginia, Maryland, and the District. WMATA is a "program or activity" that receives federal financial assistance, including as to the division and operations where Plaintiff worked.

## FACTS

### *Plaintiff's Employment and Initial Promotion*

10.      Plaintiff commenced her employment with WMATA around May 2019, as a Customer Engagement Representative, where she was responsible for daily interaction with transit

users to ensure safe and efficient operations.

11.    In or around January 2024, based on her exemplary performance as a Customer Engagement Representative, Plaintiff was promoted to the position of Communications Agent (a Level 19 role) at WMATA's Metro Integrated Command and Communications Center ("MICC") located in Alexandria, Virginia.

12.    As Plaintiff on-boarded in this new role, Darryl Richardson and other trainers were assigned to supervise and train her. Richardson was responsible for supervising and/or directing Plaintiff's work during this time.

13.    After Ms. Duckett completed training, she continued to work with Richardson, who frequently served as a team lead, and would serve in the role of acting supervisor when Ms. Duckett's other supervisors left the room.

14.    Plaintiff also reported to Assistant Communications Managers Calvin Battle and Jose Escobar, as well as to Communications Managers Dawn Ballard and Schawntrisicia Alston.

### The Widespread Hostile Work Environment at WMATA

15.    Upon starting her new role, Plaintiff was exposed to frequent and ongoing unwanted sexual comments and conduct from Richardson and her other male coworkers and supervisors. These comments and/or conduct was often witnessed by Defendant's supervisors.

16.    The hostile work environment at WMATA was widespread and directed at numerous female employees. Plaintiff is informed and believes that Richardson and other male employees frequently made lewd and degrading comments to and about women in the workplace. Defendant WMATA knew or should have known about the severe and pervasive hostile work environment that Plaintiff and others were subjected to, which was often witnessed by WMATA supervisors. Defendant failed to take corrective action against male employees and instead fostered

4

a toxic atmosphere that reduced women to objects of sexual commentary and pervasive harassment.

17. For example, Plaintiff is informed and believes that Richardson harassed other female employees, including, but not limited to:

a. On or around December 2024, Richardson told a female employee that he could "please her" better than her boyfriend, who was "not man enough" for her, or words to that effect. Plaintiff is informed and believes that Mr. Escobar and/or other supervisors heard Richardson say this, but did nothing to investigate, prevent or correct the harassment.

b. On another occasion in around the summer of 2024, Plaintiff is informed and believes that Richardson hugged and tickled another woman on the team inappropriately and grabbed her sides in an unwanted manner. Plaintiff is informed and believes that this was witnessed by several coworkers and a female supervising Assistant Communications Manager, however WMATA did nothing to investigate, prevent or correct the harassment.

c. Plaintiff is informed and believes that when female employees rejected Richardson's advances, he retaliated against them by ostracizing them, calling them names and treating them in a hostile manner.

18. Plaintiff also frequently heard Richardson and other male employees make lewd and inappropriate comments about women on the team. Defendants' supervisors heard and/or participated in such conduct.

a. For example, one male employee frequently talked about "what he would do" sexually to some of the women on the team, or words to that effect, and commented

on their physical appearance. He made such comments to Richardson, Mr. Escobar, and other coworkers and supervisors. Plaintiff observed Mr. Escobar laugh at such comments from this employee.

b.    Another male employee frequently told Plaintiff that she, "would not be able to handle him," if they had sex because, he had a lot of experience, or words to that effect.

19.    Further, while training Plaintiff, Richardson made frequent unwanted comments based on her sex and appearance, such as "you look nice" or "you are a beautiful woman, we should get married," "baby come back to my place" or "what are you doing when you get off," or words to that effect. These remarks were delivered in an inappropriate tone and were unwanted by Plaintiff.

20.    WMATA's total lack of corrective action of Richardson or other male employees only served to embolden Richardson and other harassers and signaled to female employees, including Plaintiff, that reporting misconduct would be futile.

21.    The severe and pervasive nature of the harassment altered the terms and conditions of Plaintiff's employment.

### The January 9, 2025 Assault

22.    The severe and pervasive harassment Plaintiff was subjected to by Richardson culminated in a physical assault that took place on January 9, 2025.

23.    While Plaintiff was sitting at her desk, Richardson approached from behind, grabbed her jaw, and forced her head back while squeezing her jawline. Shocked, Plaintiff told Richardson "that's too rough," or words to that effect. In response, Richardson stated that he "liked it rough," or words to that effect.

6

24.     After releasing her, Richardson walked away briefly and then returned to Plaintiff's desk and smirked at her stating that he "had to go use the bathroom," or words to that effect, in a tone that Plaintiff felt suggest that was proud of what he did and/or was going to go masturbate.

### *Defendant's Failure to Immediately Investigate, Prevent, or Correct the Harassment*

25.     Shortly thereafter, Plaintiff confided in a female coworker for support. Plaintiff told her that she was fearful that she would be retaliated against if she reported the harassment, or words to that effect. Plaintiff's coworker encouraged her to report the harassment and told her that if she did not report Richardson, he would continue to harass people, or words to that effect.

26.     Plaintiff is informed and believes that this coworker then got Mr. Escobar, who came over to speak with Plaintiff. Plaintiff reported the sexual harassment to Mr. Escobar in detail at that time.

27.     Mr. Escobar told Plaintiff that he could not take the report - that she would have to report the incident to a female manager. Still in shock, Plaintiff told Mr. Escobar that she did not feel comfortable reporting it to them. Mr. Escobar told Plaintiff that he would "keep an eye" on Richardson and keep him away for the rest of Plaintiff's shift.

28.     Despite Plaintiff's complaint, later when she returned to her desk Richardson came back to Plaintiff's desk, put his arm around her uninvited, and asked if Plaintiff if she was "ok" and whether she "needed to talk to him about anything," or words to that effect. Plaintiff repeatedly tried to get Richardson off her and told him that she was "fine," in an effort to get him away from her.

29.     Shortly thereafter Plaintiff told Mr. Escobar that she wanted to formally report the harassment.

30.     Plaintiff then met with Mr. Escobar and Ms. Ballard, and reported the harassment to Ms. Ballard. Ms. Ballard and Mr. Escobar initially told Plaintiff that she could go home for the day.

31.     Plaintiff went to get her things but became extremely distressed when she saw Richardson and another male coworker near her desk. Plaintiff then asked a coworker to bring her things to her instead.

32.     Before she was able to leave, Plaintiff was directed to meet with Allison Hall King, Communications Director. Plaintiff then met with Mr. Escobar, Ms. Ballard and Ms. King, and again reported the harassment by Richardson. Ms. Hall King asked Plaintiff to provide a written statement, which she did. Plaintiff was then escorted to her car and left for the day.

33.     Later that day, Mr. Escobar told Plaintiff that she was removed from the schedule until further notice.

34.     On or around January 10, 2025, Plaintiff filed a police report with local authorities in Alexandria, Virginia.

35.     A temporary restraining order was issued against Richardson, which was later extended.

### *WMATA's Continued Failure to Investigate, Prevent and/or Correct and Retaliation Against Plaintiff Because of Her Complaints*

36.     Having heard nothing from WMATA, on January 14, 2025, Plaintiff reached out to her managers for an update. Ms. Hall King responded to her and called Plaintiff. Ms. Hall King informed Plaintiff that she was being placed on administrative leave. Ms. Hall King also told Plaintiff that the Office of Employee Engagement and Equal Opportunity (OEEO) could not take

8

her report unless she was physically back at work, and that if she wanted to make a report before that time, Plaintiff would have to contact the OEEO Office directly.

37.     Plaintiff submitted sexual harassment and retaliation complaint to OEEO on or around January 16, 2025.

38.     **Despite video evidence of the assault and the Plaintiff's detailed reports, WMATA did not discipline or terminate Richardson.**

39.     On or around January 31, 2025, Ms. Hall King contacted Plaintiff and told her that she had to return to work. Plaintiff informed Ms. Hall King that she had a Protective Order, and that she still required reasonable accommodations. Instead of engaging in a good faith interactive process, Ms. Hall King callously told Plaintiff that, "there is no reason you can't work together," or words to that effect. Plaintiff told Ms. Hall King that she did not feel safe. Ms. Hall King told Plaintiff simply that she and Richardson would "be on different shifts." Plaintiff pointed out that Richardson would overlap with her in the office during the shift changes and asked what Defendant was going to do to protect her and enforce the Protective Order during that time. Ms. Hall King told Plaintiff it, "we will deal with it when it comes up," or words to that effect.

40.     **Despite the Protective Order, Defendant refused to guarantee separation from Richardson or a harassment-free environment**.

41.     Plaintiff followed up by submitting a request for reasonable accommodations, including continued medical leave due to her worsening mental health. Plaintiff also requested a job reassignment given that WMATA refused to remove Richardson from the workplace or confirm what safety measures were being taken to ensure compliance with the Protective Order. Plaintiff further requested that the harassment be investigated and that she be provided information about the findings.

9

42. On February 3, 2025, Ms. Hall King responded to Plaintiff. Ms. Hall King again told Plaintiff that her and Richardson would be assigned to a different shifts, "pending the outcome of the approaching court hearing." Ms. Hall King further informed Plaintiff that she was "not in a position to approve a relocation to a different position[,]" but stated that Plaintiff was "welcome to apply for position within the Authority at your discretion."

43. On around February 6, 2025, Plaintiff met with OEEO via Teams and provided more information about her complaint.

44. By February 19, 2026, Plaintiff still received no response to her complaints of harassment, discrimination and retaliation. Plaintiff emailed Tira Swinton and WMATA's OEEO Hotline asking for an update. Plaintiff also informed WMATA that a protective order was issued through the trial date with Richardson in April.

45. Around this time, WMATA informed Plaintiff at that time that it would not begin its internal investigation until *after* Richardson's criminal trial (*i.e.*, not for several months).

46. On around this time, having received no updates about her complaints or her return to work, Plaintiff contacted Ms. Hall King for further information.

47. On or around April 2, 2025, WMATA informed Plaintiff that she would be transferred to a lower-level position as Customer Engagement Specialist (Level 18) in a different WMATA office. This transfer constituted a demotion, fewer responsibilities, and limited overtime opportunities, thus impacting her earnings and career trajectory. In addition, Plaintiff was not given the full range of duties for Customer Engagement Representative. Plaintiff was not permitted to take customer phone calls or monitor WMATA's social media accounts.

48. The demotion was not voluntary; it was presented to her as the only option to "resolve" the issue and wholly ignored Plaintiff's requests for accommodations, like enforced separation from Richardson or alternative roles at her original level.

### Denial of Promotions or Job Reassignment

49. Throughout this period, Plaintiff applied to numerous internal positions for which she was qualified including, but not limited to:

    a. Applying for a Preparedness Specialist position on or around February 10, 2025;

    b. Applying for an Event Producer position on around April 14, 2025;

    c. Applying for a Manager Administrative Services position on or around April 14, 2025;

    d. Applying for a Call Center Supervisor position on or around May 6, 2025.

50. Despite her strong credentials, WMATA did not select or even interview her for any of these roles. Further, Plaintiff is informed and believes that Defendant failed to consider any of these positions as a job reassignment accommodation for Plaintiff. Plaintiff is informed and believes that these denials were discriminatory and/or retaliatory.

### Continued Retaliation

51. On around April 14, 2025, Plaintiff was informed by WMATA that it would not even provide court leave so that she could attend the upcoming trial against Richardson and related pre-trial meetings.

52. On or around May 14, 2025, Plaintiff submitted another complaint regarding the harassment, discrimination and retaliation to Defendant's Office of Equal Employment Opportunity ("OEEO").

53. Around that time, Ms. Hall King told Plaintiff that she was being transferred back to her original Communications Agent position. Ms. Hall King informed Plaintiff that Richardson was going to be assigned elsewhere. This "solution" failed to address the hostile environment, ensure Plaintiff's long-term safety, and came after *months* of inaction and without any investigation into her complaints.

54. Plaintiff complained to Ms. Hall King about the ongoing retaliation, including the demotion and Defendant's failure to interview her for any of the internal positions that she applied for.

55. On or around, May 15, 2025, Plaintiff received an email from Carla E. Elliott, Manager, Civil Rights Compliance for OEEO that stated in relevant part that her complaints of retaliation were "unsubstantiated," and that the investigation into her harassment complaints "will continue to be deferred until the completion of the criminal prosecution initiated by you."

56. Plaintiff is informed and believes that WMATA failed to investigate Plaintiff's complaints. Indeed, Defendant did not even interview Plaintiff before returning her May 14th complaint as "unsubstantiated."

57. On May 20, 2025, Plaintiff was denied a position as a Call Center Supervisor without an interview.

58. The severe emotional distress from Defendant's conduct led Plaintiff to begin another medical leave on or around May 25, 2025, during which she requested reasonable accommodations such as extended leave, a harassment-free workplace, enforcement of the restraining order, and consideration for job reassignment.

***Richardson's Criminal Conviction and WMATA's Continued Failure to Investigate, Prevent and/or Correct the Harassment Leading to Plaintiff's Constructive Termination***

59. **On or around June 24, 2025, Richardson was convicted of misdemeanor assault and battery in a Virginia court, resulting in a two-year restraining order requiring "no contact of any kind" with Plaintiff**. Ms. Hall King, Mr. Escobar and Richardson all testified at the trial.

60. Plaintiff immediately notified both Ms. Hall King and Carla E. Elliott, Manager Civil Rights Compliance in Defendant's Office of Equal Employment Opportunity ("OEEO"). Plaintiff provided a copy of the Protective Order and inquired into the status of the OEEO investigation and measures to ensure her safety upon return.

61. WMATA provided no immediate substantive response.

62. Finally, on or around June 30, 2025, Ms. Elliott informed Plaintiff that OEEO would *start* its investigation on July 1, 2025, which came nearly *six months* after her initial report even though the incident was captured on video.

63. On or around July 1, 2025, a WMATA ADA Program Compliance Specialist, Dominque Coffee suddenly notified the Plaintiff that her requests for a reasonable accommodation were being "administratively closed." Instead of engaging in a good faith interactive process, Defendant presented her with the option to return to the lower-level Customer Engagement Specialist role or to her original position, but without assurances that the Court's restraining order would be enforced or that preventive measures were in place.

64. Plaintiff responded to Ms. Coffee on July 2, 2025, further complaining about the harassment, discrimination and retaliation and requesting that her requests for reasonable accommodations be reviewed.

65.    **Plaintiff is informed and believes that Richardson continued to work in the MICC throughout this time.**

66.    As a result of the continued discrimination, retaliation, refusal to accommodate Plaintiff, and Defendant's complete failure to prevent or correct the harassment, Plaintiff felt she had no other option but to resign.

67.    On or around August 5, 2025, Plaintiff was constructively terminated.

### *Richardson was Convicted a <u>Second</u> Time after Appeal, but WMATA Continues to Employ Him*

68.    On or around November 18, 2025, Richardson was tried a second time following an appeal of the initial conviction. **Richardson was convicted a second time.**

69.    **Despite *two* criminal convictions, Plaintiff is informed and believes that Defendant still failed to discipline Richardson in any way for the harassment.**

70.    On or around January 29, 2026, Plaintiff received a "Determination Letter" closing her complaints of harassment and discrimination to the Office of Equal Employment Opportunity with a "no cause" finding, and astonishingly stated that, "no recommendations have been made for appropriate corrective action to be taken."  The letter stated in relevant part:

**Background**: On July 1, 2025, you filed a complaint of discrimination with the Office of Equal Employment Opportunity (OEEO). You alleged that you were subjected to sexual harassment by Darryl Richardson. You indicated that Mr. Richardson subjected you harassing behavior by grabbing your face and making a comment that he "likes it rough." You believed the behavior was harassment and subjected you to hostile environment in violation of Metro Policy/Instruction 7.1.2/3 Anti-Harassment.

**Scope of Investigation**: An investigation was conducted to determine whether Mr. Richardson actions subjected you to discriminatory treatment and/or that your allegations that such actions violated Metro's policy could be substantiated.

**Findings**: Full review of the testimonies from you, Mr. Richardson, witnesses, and other documentary evidence submitted and/or discovered was conducted during the investigation. The allegations of discrimination were not supported by the evidence gathered and reviewed.

This complaint is hereby closed with a determination of **No Cause**. There is no appeal to this determination. In light of this finding of **No Cause** for this complaint, no recommendations have been made for appropriate corrective action to be taken.

71.    Plaintiff is informed and believes that Richardson remains employed by WMATA to this day.

**COUNT I**

**Sexual Harassment, Sex-Based Discrimination and Imposition of a Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964**

**42 U.S.C. §§ 2000e, *et seq.*,**

72.    Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

73.    Plaintiff was entitled to protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e–2(a), *et seq.*, which prohibits employers from discriminating against individuals on the basis of their sex.

74.    Plaintiff was subjected to a hostile work environment that consistently treated female employees as inferior and normalized persistent degrading sexual comments in the workplace, unwanted sexual advances, and physical assault by male co-workers.

15

75.    Plaintiff was made to work in an unreasonably hostile environment where Darryl Richardson and other male employees often engaged in demeaning and harassing acts, including unwanted sexual advances, disparaging comments and a physical assault on January 9, 2025.

76.    Defendant WMATA was or should have been aware of Richardson's harassing and discriminatory conduct, yet failed to investigate and/or take proper action to correct the matters complained of by Plaintiff and other female employees, who were also harassed and/or subjected to unwanted touching by Richardson and/or others prior to the acts perpetrated on Plaintiff.

77.    As a direct and proximate result of WMATA and its employees' conduct, including but not limited to the conduct of Richardson, Plaintiff has been caused to suffer from economic losses and mental anguish including but not limited to losses in earnings, bonuses, overtime opportunities, employment benefits, earning capacity, opportunities for employment advancement and work experience, embarrassment, humiliation, damage to her reputation and other damages to be proven at the time of trial.

78.    As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, litigation costs, and her reasonable attorneys' fees.

WHEREFORE, Plaintiff demands that the Court enter judgment in favor of Plaintiff and against Defendant WMATA, that the Court award Plaintiff compensatory damages, including back pay and front pay, plus interest, in an amount to be proven at trial, reasonable attorneys' fees and costs incurred in this litigation; and any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

16

## COUNT II
### Retaliation in violation of the Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e-3 (a), *et seq.*

79.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

80.     At all relevant times herein, Defendant WMATA was Plaintiff's employer.

81.     As an employee of Defendant WMATA, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), et seq., which prohibits an employer from taking retaliatory adverse action against an employee because the employee engaged in a statutorily protected activity, including opposing any unlawful employment practice or assisting and/or participating in any manner in an investigation.

82.     As described more fully above, Plaintiff engaged in protected activities, including but not limited to making oral and written complaints of harassment and discrimination to her supervisors and the Office of Employee Engagement and Equal Opportunity (OEEO) in January 2025 following the assault, filing a police report on January 10, 2025, and filing an EEOC Charge on July 8, 2025.

83.     WMATA's motives were pretextual. For example, the demotion was framed as a "solution" but instead punished Plaintiff for reporting. As a result of Plaintiff's participation in these protected activities, Defendant WMATA subjected her to adverse employment actions, including but not limited to a demotion/transfer on April 9, 2025, denial of promotion opportunities by WMATA management, prolonged delays in investigating her harassment complaints, refusal to accommodate her disability and personal safety needs, and the administrative closure of her ADA accommodation request by HR Representative Dominique C. Coffee in July 2025.

17

84. WMATA effectively demoted Plaintiff on or about April 9, 2025 after and because of Plaintiff's reports in January 2025, and WMATA supervisory decisionmakers were aware of her protected activity. Temporal proximity (weeks to months) and contemporaneous statements by management support a but-for causal nexus.

85. A reasonable employee in Plaintiff's position would have found the conduct by Defendant WMATA materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

86. As a direct and proximate result of WMATA and its employees' conduct, including but not limited to the conduct of Richardson, Plaintiff has been caused to suffer from economic losses and mental anguish including but not limited to losses in earnings, deferred compensation, employment benefits, earning capacity, opportunities for employment advancement and work experience, embarrassment, humiliation, damage to her reputation and other damages to be proven at the time of trial.

87. As a result, Plaintiff is entitled to an award of compensatory damages, litigation costs, and her reasonable attorneys' fees.

WHEREFORE, Plaintiff demands: that the Court enter judgment in favor of Plaintiff and against Defendant WMATA; that the Court award Plaintiff compensatory damages, including back pay and front pay, plus interest, in an amount to be proven at trial; that the Court award Plaintiff her reasonable attorneys' fees and costs incurred in this litigation; and that this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT III

**Disability Discrimination / Failure to Accommodate in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)(d).**

88.     Plaintiff adopts and incorporates by reference the allegations contained above with the same effect as if fully set forth herein.

89.     WMATA is a "program or activity" that receives federal financial assistance, including as to the division and operations where Plaintiff worked.

90.     Plaintiff is an individual with a disability within the meaning of § 504 and is an otherwise qualified employee who can perform the essential functions of her position with or without reasonable accommodation. In employment cases, § 504 adopts ADA Title I standards (29 U.S.C. § 794(d)).

91.     WMATA had a duty to engage in a good-faith interactive process to identify a reasonable accommodation, which is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific accommodation.

92.     Plaintiff suffered from mental health conditions triggered by the January 9, 2025 assault by a coworker at WMATA. Plaintiff suffered from anxiety, depression, and PTSD, that impaired the major life activities of working, sleeping, and emotional well-being, and constitutes a disability within the meaning of Section 504.

93.     The stress and lack of a safe work environment at WMATA was significantly more detrimental to Plaintiff's mental health than her previous work conditions prior to the January 9, 2025 assault. Due to her disabling mental health conditions resulting from the assault, Plaintiff could not perform her duties without reasonable accommodations such as extended medical leave and separation from and/or enforcement of the restraining order(s) against Darryl Richardson.

94.     WMATA was on notice of Plaintiff's disability.

95.     At all times relevant to this action, the Plaintiff was meeting or exceeding her job requirements as a Communications Agent at WMATA.

96.     After going on administrative leave following the assault, Plaintiff learned that she would be required to return to work and that her continued employment would require working in an environment that exacerbated her mental health disabilities without accommodation. Plaintiff contacted Defendant WMATA's supervisors, including Allison Hall King, and specifically discussed with her that due to her mental health conditions she would be unable to perform her duties without assurances that she would be separated from her assailant and returning to a harassment free workplace.

97.     WMATA failed to accommodate Plaintiff's request that measures be put into place to ensure she would not encounter her assailant at work and endure no further harassment. Instead, Plaintiff was transferred to a lesser role.

98.     WMATA did not consider other available positions at the same level that could accommodate Plaintiff's disability. Upon information and belief, WMATA had other available positions in its portfolio for which Plaintiff was well-qualified and could have been reassigned that would have been at the same level, and would not exacerbate her mental health conditions.

99.     On or about May 25, 2025, Plaintiff formally requested accommodations related to her mental health disability, including (among other measures) extended leave, enforcement of a no-contact and/or separation from her assailant, a harassment-free workplace, and reassignment to a position on the same or higher level, commensurate with her qualifications.

100.    WMATA failed to provide reasonable accommodations and failed to engage in a good-faith interactive process, and it excluded Plaintiff from, denied her the benefits of, and subjected her to discrimination in her employment because of her disability, including by, *inter*

*alia*, administratively closing her request on July 1, 2025 and refusing to implement separation or safety measures to ensure her assailant's / co-worker's compliance with the Court's restraining order, and/or denying advancement opportunities.

101.    Defendant WMATA acted in knowing bad faith.

102.    As a direct and proximate result of Defendant WMATA's failure to engage Plaintiff in the mandatory interactive process to discuss and identify reasonable accommodation(s) to manage Plaintiff's disability that would permit her to perform the essential functions of her position, Defendant failed to make reasonable accommodations.

103.    As a further direct and legal result of Defendant WMATA and its supervisors' conduct, Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

104.    Defendant WMATA's actions directly and proximately caused all injuries and damages sought herein.

WHEREFORE, Plaintiff demands: that the Court enter judgment in favor of Plaintiff and against Defendant WMATA; that the Court award Plaintiff compensatory damages, plus interest, in an amount to be proven at trial; that the Court award Plaintiff her reasonable attorneys' fees and costs incurred in this litigation; and that this Court award Plaintiff such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper

### JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated: April 22, 2026                         ELRICH LAW OFFICE, PLLC

                                                      _____/s/ Joshua Erlich_____

21

Joshua Erlich (Bar No. 81298)
The Erlich Law Office, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel: (703) 791-9087
Fax: (703) 722-8114
jerlich@erlichlawoffice.com
*Attorney for Plaintiff*


JOSEPH, GREENWALD & LAAKE, PA

Erika Jacobsen White
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(240) 552-1187
(240) 553-1750 (fax)
ewhite@jgllaw.com

*Pro Hac Vice Pending*

22